IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

HIREANA JOHNSON,                  *
                                  *
        Plaintiff,                *
                                  *
        v.                        *          CV 424-143
                                  *
INTERNATIONAL LONGSHOREMAN        *
ASSOCIATION, LOCAL 1414,          *
                                  *
        Defendant.                *

---

**O R D E R**

---

Presently pending before the Court are Defendant's motion to dismiss (Doc. 5) and Defendant's request for judicial notice (Doc. 7). For the following reasons, Defendant's motions are **GRANTED**.


**I. BACKGROUND**

Plaintiff filed suit on July 11, 2024 under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Doc. 1, at 1-2.) She filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 31, 2022 and received her right to sue letter on April 12, 2024. (Id. at 2.) Plaintiff brings two claims in violation of Title VII: (I) sexual harassment; and (II) retaliation. (Id. at 9-13.) The relevant facts are as follows.

On May 25, 2021, Plaintiff began working for Defendant at the Ocean Terminal. (Id. at 3.) She reported to Jerry Williams and worked with Eric Jackson. (Id.) Jackson ran the "ro-ro," and on Plaintiff's first day, he approached her and insisted she take his number in case there was an "emergency." (Id.) Plaintiff was then assigned to a job with Eric Johnson, but she still had daily contact with Jackson. (Id.)

Throughout her workday, Plaintiff rode in a van with Jackson and others, and Jackson often make sexually inappropriate comments. (Id. at 4.) Plaintiff voiced her objections to Jackson, and he at first agreed to tone it down. (Id.) Plaintiff later received phone calls from Jackson, and he stressed to her the importance of maintaining her hours. (Id.) In these conversations, Jackson stated he noticed Plaintiff worked out and asked if he could join her, but she quickly declined. (Id.) Although Plaintiff made clear she was not interested in Jackson, on June 13, 2021, Jackson sent her a video of himself engaged in sexually explicit conduct. (Id.) Metadata from the video shows he was at work when the video was sent. (Id. at 5.) Plaintiff again confronted Jackson and told him his conduct was unwanted, unsolicited, and inappropriate, and he again apologized. (Id.)

In July 2021, Jackson again texted Plaintiff an unsolicited photo of himself with his shorts pulled down, exposing himself. (Id.) Plaintiff texted back that he needed to stop. (Id.) On

2

July 29, 2021, Jackson made another inappropriate and suggestive comment to Plaintiff. (Id.) On August 2, 2021, Plaintiff reported Jackson's unwarranted sexual advances to Business Agent Decy-O McDuffie. (Id. at 6.) After receiving the complaint, McDuffie explained Jackson was his "boy," and he would help Jackson no matter right or wrong. (Id.) McDuffie then called Jackson into the meeting with Plaintiff, and Jackson agreed to stop sending Plaintiff videos and photos, not to follow Plaintiff around, not to call or speak to her, and to refrain from attempts to hinder her work. (Id. at 6-7.) A week later, Plaintiff was leaving the hall and Jackson appeared with three men and yelled that Plaintiff was snitching on him. (Id. at 7.) Plaintiff was concerned her objections were not taken seriously, so on August 9, 2021, she reported Jackson's inappropriate actions and retaliatory harassment to Vice President Paul Mosely. (Id.) Although Plaintiff asked Mosely and McDuffie to keep her concerns confidential, the day after she reported Jackson, the confidential discussion began spreading throughout the workplace. (Id.) Jackson later sent Plaintiff a picture of a snake he killed, which she took as a threat on her life. (Id.) Plaintiff again reported the matter to McDuffie, and he assured her he would talk with Jackson but that her life was not in danger. (Id. at 8.)

Plaintiff continuously reported Jackson to management in fall 2021, and then in December 2021, she learned she was blocked from

the Powered Industrial Truck driver certification list, which prevented her from completing her hours for her 2021 contract. (Id.) Plaintiff was still unsatisfied with management's handling of her harassment and retaliation, so on January 24, 2022, she prepared a written hostile work environment claim for Defendant's Port Grievance Committee. (Id.) In early February 2022, the same day the Port Grievance Committee was scheduled to interview Jackson, Plaintiff found her vehicle's tires slashed and windows shattered. (Id.) Although Plaintiff and Jackson were instructed to keep their distance from one another, in May 2022, Jackson appeared in an area Plaintiff was assigned to work. (Id. at 9.) Then in August 2022,[1] after receiving Plaintiff's EEOC charge, Defendant suspended her for thirty days without pay for the May 2022 incident when Jackson appeared in her assigned work area. (Id.)

Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. 5.) It argues Plaintiff's claims are time barred because she failed to exhaust her administrative remedies, and she has failed to state a claim upon which relief can be granted. (Id. at 1.) Plaintiff responded in opposition (Doc. 10), and Defendant replied in support (Doc. 13). The Court addresses the Parties' arguments below.

---

[1] In her Complaint, Plaintiff alleges her suspension took place on August 3, 2022 and August 2, 2022. (Doc. 1, ¶¶ 41, 57.)

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The court need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Id. at 677-79. Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v.

Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993)
(citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th
Cir. 1991)).


### III. DISCUSSION

The Court first addresses Defendant's motion for judicial
notice (Doc. 7) and then considers Defendant's motion to dismiss
(Doc. 5).

### A. Judicial Notice

Defendant moves the Court to take judicial notice of
Plaintiff's May 31, 2022 EEOC Charge (the "Charge"). (Doc. 7.)
Plaintiff did not respond to this motion, so it is deemed
unopposed. See L.R. 7.5, SDGa. ("Failure to respond [to a motion]
within the applicable time period shall indicate that there is no
opposition to a motion"). Nonetheless, the Court considers whether
there is a legal basis to take judicial notice of the Charge and
whether it can be considered in deciding the motion to dismiss.

Federal Rule of Evidence 201(b) permits the Court to
"judicially notice a fact that is not subject to reasonable dispute
because it: (1) is generally known within the trial court's
territorial jurisdiction; or (2) can be accurately and readily
determined from sources whose accuracy cannot reasonably be
questioned." A court has wide discretion to take judicial notice
of "appropriate adjudicative facts at any stage in a proceeding,"

6

but the process is "highly limited" because "the taking of judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in district court." Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC, 369 F.3d 1197, 1204-05 (11th Cir. 2004) (citations omitted). Furthermore, at the motion to dismiss stage, the Court is generally restrained to consider only the allegations within the four corners of the complaint. See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010). But an exception to this rule is recognized "if [the extrinsic document] is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010) (citation omitted); accord Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1285 (11th Cir. 2007) (considering document attached to motion to dismiss because "it [was] referred to in the complaint, it [was] central to [the plaintiff's] . . . claim, . . . and neither party challenge[d] its authenticity"). Otherwise, if "matters outside the pleadings are presented to and not excluded by the court," it "must convert the motion to dismiss into a summary judgment motion." Fed. R. Civ. P. 12(d); SFM Holdings, 600 F.3d at 1337.

"[C]ourts have found that an EEOC charge attached to a motion to dismiss may be considered where it was central to a complaint

brought by a charging party, and the authenticity of the charge was not disputed." Ward v. Huntsman Advanced Materials LLC, No. 1:21-CV-90, 2021 WL 4256468, at *4 (S.D. Ala. Sept. 16, 2021) (citations omitted). It is undisputed that the Charge is central to Plaintiff's claim, and neither Party has disputed its authenticity. Thus, the Court takes judicial notice of the Charge. As such, Defendant's motion for judicial notice (Doc. 7) is **GRANTED**. The Court will consider the Charge in ruling on the motion to dismiss.

**B. Motion to Dismiss**

Defendant moves to dismiss under 12(b)(6), arguing Plaintiff's claims are time barred because she failed to exhaust her administrative remedies, and she has failed to state a claim upon which relief can be granted. (Doc. 5, at 1.) In response, Plaintiff argues her allegations arise directly from the Charge or were sufficiently included within the Charge to inform Defendant of the claims against it. (Doc. 10, at 1.) Defendant replied, arguing first that Plaintiff's response was untimely,[2] and that her claims still fail. (Doc. 13.) The Court addresses Plaintiff's claims in turn.

---

[2] Plaintiff's response to the motion to dismiss was due November 12, 2024, and she filed her response on November 13, 2024. (Doc. 10); see L.R. 7.5, SDGa. Although it was untimely, given the Eleventh Circuit's desire to decide cases on the merits, not based on procedural pitfalls, the Court considers the response herein. See Perez v. Wells Fargo N.A., 774 F.3d 1329, 1332 (11th Cir. 2014).

1. Count I: Sexual Harassment

Defendant argues Count I fails because 42 U.S.C. § 2000e-5(e)(1) requires an EEOC charge to be filed within 180 days from the date of the alleged unlawful employment practice. (Doc. 6, at 5.) It argues that Plaintiff filed her Charge on May 31, 2022, so the 180-day lookback period occurred from December 2, 2021 to that day. (Id. at 6.) Plaintiff argues her Complaint details an ongoing series of sexual harassment starting on June 6, 2021 when Jackson made inappropriate comments about his anatomy and ending on July 29, 2021 when he explained he was working out hard for her. (Doc. 10, at 6-7.) She argues the timeline of events and nature of her allegations demonstrate a continuous violation of her rights, establishing a nexus between timely-filed and time-barred claims. (Id. at 6.)

"Before a potential plaintiff may sue for discrimination under Title VII, she must first exhaust her administrative remedies." Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001) (citation omitted). "The first step down this path is filing a timely charge of discrimination with the EEOC." Id. (citations omitted). "For a charge to be timely in a non-deferral state such as Georgia, it must be filed within 180 days of the last discriminatory act." Id. (citing 42 U.S.C. § 2000e-5(e)(1)). "In order to establish a continuing violation, a plaintiff must demonstrate that the untimely act is part of an ongoing

9

discriminatory practice or policy." Naia v. Deal, 13 F. Supp. 2d 1369, 1374 (S.D. Ga. 1998) (citing Roberts v. Gadsden Mem'l Hosp., 850 F.2d 1549, 1550 (11th Cir. 1988)). In fact, "[i]solated acts of discrimination are not sufficient to invoke the continuing violation exception, and the harm suffered must be more than the lasting impact of the violation about which she complains." Id. (citing Roberts, 850 F.2d at 1550).

Defendant argues the discrete acts of discrimination occurred on June 6, 2021; June 13, 2021; and mid-July 2021, and Plaintiff reported them on August 2, 2021. (Doc. 6, at 5.) Plaintiff filed her charge on May 31, 2022, so the 180-day statutory lookback period goes to December 2, 2021. (Doc. 7, at 5.) Despite Plaintiff's argument that there was a continuing violation, for that theory to apply, one of the acts of discrimination must have taken place during the 180-day lookback period. (See Doc. 10, at 6); Wilkerson, 270 F.3d at 1317 (citing 42 U.S.C. § 2000e-5(e)(1)). The only allegations that occurred after December 2, 2021, when the 180-day lookback period began, fall under Plaintiff's claim for retaliation. (Doc. 1, at 8-9, 12-13; Doc. 10, at 6.) Plaintiff herself admits the last sexual harassment allegation occurred in July 2021. (Doc. 10, at 6-7.)

For these reasons, Defendant's motion to dismiss is **GRANTED** as to Count I, and Plaintiff's claim for sexual harassment is

**DISMISSED** for failure to timely exhaust her administrative remedies.

### 2. Count II: Retaliation

Defendant similarly argues Plaintiff's retaliation claim should be dismissed for failure to exhaust administrative remedies. (Doc. 6, at 9-10.) Defendant also argues Count II fails to state a claim because Plaintiff did not plead facts sufficient to raise the claim above the speculative level or set forth allegations that Defendant's actions would rise to the level of retaliation. (Id. at 10.) Plaintiff asserts she exhausted all administrative remedies because her Charge outlined continuous retaliation following her complaints of sexual harassment. (Doc. 10, at 8.) She argues "[i]t is the nature of retaliation claims that they arise after the filing of the EEOC charge." (Id. at 9.) Furthermore, Plaintiff argues she established a prima facie retaliation claim. (Id. at 10-13.)

### a. *Exhaustion of Administrative Remedies*

Defendant argues Plaintiff's retaliation claim has not been administratively exhausted because she did not file an amended or supplemental EEOC charge addressing the alleged August 2022 retaliation when she was suspended without pay. (Doc. 6, at 6.) Plaintiff argues her Charge "alleged retaliation stemming from her opposition to the ongoing sexual harassment and hostile work environment created by Jackson, and perpetuated by Defendant's

11

management." (Doc. 10, at 8.)  She argues that since retaliation was central to her Charge, any additional retaliatory acts arising after May 31, 2022, including her August 2022 suspension, naturally fall within the scope of her Charge. (Id. at 8-9.)

As with a discrimination claim, a Title VII retaliation claim cannot be brought until an EEOC charge has been filed. Thomas v. Miami Dade Pub. Health Tr., 369 F. App'x 19, 22 (11th Cir. 2010) (citation omitted).  However, the Eleventh Circuit has found "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." Id. at 23 (citations omitted).  Thus, the Court can consider Plaintiff's claims to the extent she contends "they were caused by the filing of her EEOC charge." Id.; see also Ellison v. Postmaster Gen., U.S. Postal Serv., No. 20-13112, 2022 WL 4726121, at *8 (11th Cir. Oct. 3, 2022) (citation omitted) ("[A] failure to expressly claim retaliation as part of an administrative charge of discrimination will not defeat a later suit that alleges retaliation if the charged conduct reasonably led to the retaliatory conduct.").  However, the retaliation claim must relate to a discrete act that occurred before Plaintiff filed her charge. Ellison, 2022 WL 4726121, at *8 (citing Duble v. FedEx Ground Package Sys., Inc., 572 F. App'x 889, 893 (11th Cir. 2014)).

Plaintiff asserts her August 2022 suspension was caused by the filing of her Charge on May 31, 2022. (Doc. 1, at 12.) Although her Charge does not include her August 2022 suspension, since it occurred after the Charge was filed, the Court finds it is still properly before the Court. The Eleventh Circuit has explained "that the scope of a judicial complaint is defined by the scope of the EEOC investigation that can reasonably be expected to grow out of the charge of discrimination." Baker v. Buckeye Cellulose Corp., 856 F.2d 167, 169 (11th Cir. 1988) (citation and internal quotation marks omitted). Because a retaliation claim "could reasonably be expected to grow" out of the Charge, the Court finds Plaintiff exhausted her administrative remedies on her retaliation claim for her August 2022 suspension.

   b. *Failure to State a Claim*

Defendant argues Plaintiff's claim should still be dismissed because she failed to plead facts regarding Defendant's actions to raise the claim above a speculative level or to set forth the actions Defendant allegedly took that would constitute retaliation. (Doc. 6, at 10.) Defendant asserts Plaintiff did not plead sufficient facts about the circumstances of her August 2022 suspension. (Id.) Plaintiff argues she established a prima facie case because she engaged in a protected activity by complaining about Jackson; she was subject to adverse employment action by being removed from work assignments, getting blocked

from completing her hours, and being suspended; and she experienced adverse actions directly following her complaints and Charge, indicating a close causal relationship.[3]  (Doc. 10, at 10-13.)

"A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action."  Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008) (citation omitted).  The Parties do not dispute the first two elements have been sufficiently alleged, but Defendant argues Plaintiff failed to plead the causal connection between the August 2022 suspension and Defendant's receipt of the Charge.  (Doc. 6, at 10.)  Thus, the Court turns its analysis to the third element, causation.

"To satisfy the causation element, the plaintiff must show the protected activity when the adverse employment action was taken, and the protected activity and the adverse action were not 'wholly unrelated.'"  Miami Dade Pub. Health Tr., 369 F. App'x at 23 (citation omitted).  A plaintiff can allege "relatedness" by showing "the decision maker was aware of the protected conduct,

---

[3] In response to the motion to dismiss, Plaintiff asserts several actions constituted retaliation.  (Doc. 10, at 11.)  Defendant argues her assertions "that she was 'removed from her work assignments' and 'blocked from completing her project hours'" were not in her Charge or Complaint, and she cannot amend her Complaint through her response.  (Doc. 13, at 5.)  The Court agrees with Defendant.  Count II of Plaintiff's Complaint asserts retaliation based on her August 2022 suspension, so the Court treats that as the basis of her claim for its analysis.  (Doc. 1, at 11-13.)

and if there was close temporal proximity between the awareness and the adverse action", but "[c]onclusory and generalized allegations of discrimination are not probative and are properly stricken by a district court." Id. (citation omitted).  "[M]ere temporal proximity, without more, must be 'very close.'" Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (quoting Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)); see also Mihoubi v. Caribou Coffee Co., 288 F. App'x 551, 557 (finding a "less than eight day period is 'very close'" (citation omitted).)

There were 63 days between when Plaintiff filed her Charge on May 31, 2022 and when she was suspended without pay on August 2, 2022.[4]  (Doc. 1, at 12.)  The Eleventh Circuit has made clear that a three-to-four-month gap cannot establish causation on its own, but has not offered much guidance on where two months falls on the spectrum.  See Cooper Lighting, 506 F.3d at 1364; Walker v. Sec'y, U.S. Dep't of Air Force, 518 F. App'x 626, 628 (11th Cir. 2013). The Eleventh Circuit requires that when temporal proximity is the only evidence for causation, the timing must be "very close" and has clarified that eight days is "very close." Mihoubi, 288 F. App'x at 557 (citation omitted).  Plaintiff cites no cases, nor is the Court aware of any, that illustrate two months is "very close"

---

[4] For purposes of its analysis, the Court assumes Plaintiff's suspension was on August 2, 2022 rather than August 3, 2022.  (Doc. 1, ¶¶ 41, 57.)

in the eyes of the Eleventh Circuit or otherwise sufficient to establish the close temporal proximity required to allege causation. Thus, the Court finds the two months, without more, is insufficient for Plaintiff to sufficiently allege her retaliation claim.

Aside from the two-month period, Plaintiff only provides conclusory allegations relating to the causal connection between the filing of her Charge and her August 2022 suspension. She asserts that "[a]bsent proximity, but for Plaintiff's protected conduct, she would not have been subjected to an adverse employment action." (Doc. 1, at 12.) She argues that McDuffie's comments that he would protect Jackson "create a causal connection between Plaintiff's repeated protected conduct and her adverse employment action." (Id. at 13.) But there are no allegations that the decision maker who suspended Plaintiff was aware she filed her Charge. See Miami Dade Pub. Health Tr., 369 F. App'x at 23. The Court requires more than conclusory and generalized allegations, and Plaintiff has failed to put forth sufficient allegations of the causal connection between her protected activity and suspension. See id. Based on the Court's findings, Plaintiff has failed to satisfy the causal connection element of retaliation. Thus, Defendant's motion to dismiss is **GRANTED** as to Count II, and Plaintiff's claim for retaliation is **DISMISSED** for failure to state a claim.

16

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendant's motion to dismiss (Doc. 5) and Defendant's request for judicial notice (Doc. 7) are **GRANTED**. The Clerk is **DIRECTED** to **TERMINATE** all pending motions and deadlines, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this _14th_ day of August, 2025.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA